IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF TEXAS
SAN ANTONIO DIVISION

| | | |
|---|---|---|
| EDUARDO ROJAS; JOSEPH TREVINO; TARA SCIOLINO; CHRISTOPHER ACQUE; and MICHAEL MITSUK | § | |
| Plaintiffs, | § | |
| vs. | § | Civil Action No. 17-307 |
| ELBIT SYSTEMS OF AMERICA, LLC; 4M HR LOGISTICS, LLC; and M7 AEROSPACE, LLC | § | |
| Defendants. | § | JURY DEMAND |

## PLAINTIFFS' ORIGINAL COMPLAINT

TO THE HONORABLE UNITED STATES DISTRICT JUDGE:

COME NOW Eduardo Rojas, Joseph Trevino, Tara Sciolino, Christopher Acque, and Michael Mitsuk (hereinafter, collectively, "Plaintiffs") and file this Plaintiffs' Original Complaint against Defendants Elbit Systems of America, LLC, 4M HR Logistics, LLC, and M7 Aerospace, LLC, (hereinafter, collectively, "Defendants"), in support of which would respectfully show the Court the following:

### PARTIES

1. Plaintiff Eduardo Rojas is an individual residing in the State of Texas and may be served at his home at 8322 Denali Drive, Fort Worth, Texas 76137.

2. Plaintiff Joseph Trevino is an individual residing in the State of Texas and may be served at his home at 12207 Medina Mill, San Antonio, Texas 78253.

1

3. Plaintiff Tara Sciolino is an individual residing in the State of Texas and may be served at her home at 135 PR 4703, Castroville, Texas 78009.

4. Plaintiff Christopher Acque is an individual residing in the State of Tennessee and may be served at his home at 1185 W. Mountain View Road, Apt. 1202, Johnson City, Tennessee 37604.

5. Plaintiff Michael Mitsuk is an individual residing in the State of Oregon and may be served at his home at 4848 Herrin Road NE, Salem, Oregon 97305.

6. Defendant Elbit Systems of America, LLC (hereinafter, "Elbit Systems") is a corporation doing business in the State of Texas at 4700 Marine Creek Parkway, Fort Worth, Texas 76179 and may be served through its registered agent, Corporation Service Company d/b/a CSC-Lawyers Incorporating Service Company, at 211 E. 7th Street, Suite 620, Austin, Texas 78701.

7. Defendant 4M HR Logistics (hereinafter, "4M") is a corporation doing business in the State of Texas at 10823 N.E. Entrance Road, San Antonio, Texas 78216 and may be served through its registered agent, Taylor V. Cooksey, at 6363 Woodway, Suite 600, Houston, Texas 77057.

8. Defendant M7 Aerospace, LLC (hereinafter, "M7") is a subsidiary corporation of Elbit Systems doing business in the State of Texas at 10823 N.E. Entrance Road, San Antonio, Texas 78216 and may be served through its registered agent, Lee Estes, at 10823 N.E. Entrance Road, San Antonio, Texas 78216.

## JURISDICTION AND VENUE

9. This Court has jurisdiction to hear the merits of this case pursuant to 28 U.S.C. § 1331. Venue is proper in the Western District of Texas, San Antonio Division, pursuant to 28 U.S.C. § 1391(b)-(d), as a county in which one or more Defendants maintain a principal place of business.

## FACTUAL BACKGROUND

### A. Relationship and Business Function of Defendants

10. Defendant 4M was originally a sister company to M7, a full service aerospace and defense contractor, under the privately held ownership of 4M Investments. During that time, a staffing division named M7 Staffing & Business Solutions was formed to fill flex labor needs within M7. In 2009, 4M began offering services to third parties and additional service sectors were added, including manufacturing, automotive, fiber optics and other technically skilled job industries. Following the sale of M7 to Defendant Elbit Systems in December 2010, 4M was spun off as a stand-alone entity under the original 4M ownership team.

11. Defendant Elbit Systems is a wholly owned subsidiary of Israeli defense contractor Elbit Systems, Ltd., with two of its main operation centers located in Fort Worth and San Antonio, Texas. Elbit Systems acts as a contractor for U.S. Foreign Military Financing and Foreign Military Sales programs.

12. Defendant M7 is a wholly owned subsidiary of Elbit Systems, and its headquarters are located in San Antonio, Texas. M7 is an aerospace company with several distinct business units, including aircraft parts and product support, government logistics support, aerostructures manufacturing, aircraft maintenance, repair and operations, and aerial orthorectified imaging.

13. In or around January 2014, the United States Department of Defense ("DOD") granted Elbit Systems and M7 a contract for certain aircraft and helicopter installations (hereinafter, the "DOD project"). In order to provide sufficient and skilled staff for the DOD project, Elbit Systems and M7 contracted with 4M to provide technically skilled workers at the DOD project sites in California, Hawaii and North Carolina.

### B. Relationship and Employment Function of Plaintiffs

14. Plaintiffs were all professionally involved in the DOD project that was granted to M7 and Elbit Systems. In furtherance of the DOD project, M7 and Elbit Systems contracted with 4M to provide technically skilled employees for the DOD project site in Hawaii.

15. Plaintiff Eduardo Rojas was employed by Elbit Systems for approximately seven years by the time of his termination on March 2, 2015. At the time of his termination, Mr. Rojas' official job title was Senior Systems Engineer.

16. Plaintiff Joseph Trevino was employed by M7 for approximately six years by the time of his termination on October 1, 2014. In or around April 2013, Mr. Trevino was promoted to a supervisory position. At the time of the events made basis of this action, Mr. Trevino was a team lead/ supervisor for the DOD project in Hawaii, where he oversaw the work performed by Plaintiffs Christopher Acque, Tara Sciolino and Michael Mitsuk, *inter alios*.

17. Plaintiff Christopher Acque was employed by 4M and seconded/ assigned to M7 and Elbit Systems for the DOD project in Hawaii. At the time of his termination on September 26, 2014, Mr. Acque was employed as a Senior Avionics Technician.

18. Plaintiff Michael Mitsuk was employed by 4M and seconded/ assigned to M7 and Elbit Systems for the DOD project in Hawaii. At the time of his termination on September 26, 2014, Mr. Mitsuk was employed as an Avionics Engineer.

19. Plaintiff Tara Sciolino was employed by 4M and seconded/ assigned to M7 and Elbit Systems for the DOD project in Hawaii. At the time of her termination on October 8, 2014, Ms. Sciolino was employed as an Avionics Technician.

## C. Good Faith Report of Harassment, Investigation and Termination of Plaintiffs' Employment

20. On September 16, 2014, Luke Frankie, Randy Moreno and Ms. Sciolino were working on the right side of an aircraft for the DOD project in Hawaii when Mr. Frankie said, "Hand me my dykes," to which Mr. Moreno responded, "Dude, you can't say that." At that time, Mr. Frankie and Mr. Moreno both turned and stared directly at Ms. Sciolino. Subsequently, Mr. Frankie stated, "I'm not going to change what I call them because of one person; we already have a dyke and she's on the tail." Mr. Mitsuk and Mr. Acque, who were working in the same area, overheard Mr. Frankie's commentary in this regard.

21. On September 18, 2014, Ms. Sciolino wrote and delivered a letter to human resources, in which she described the harassing incident with Mr. Frankie and Mr. Moreno. Whether or not the conduct met any legal criteria for "sexual harassment," Ms. Sciolino believed it to be sexual harassment and her report of, and opposition to, the harassment was made with such good faith belief and in keeping with company policy.

22. On approximately the same date that Ms. Sciolino's complaint was filed, Mr. Acque and Mr. Mitsuk filed a formal complaint regarding the same incident with human resources. In response, human resources asked Mr. Acque and Mr. Mitsuk to be witnesses and to write letters detailing what they had seen and heard. Whether or not the conduct met any legal criteria for "sexual harassment," Mr. Acque and Mr. Mitsuk believed it to be sexual harassment and their reports of, and opposition to, the harassment were made with such good faith belief and in keeping with company policy.

23. On or about September 20, 2014, Mr. Acque and Mr. Mitsuk wrote the requested letters and submitted the same to human resources.

24. Around this same time, Mr. Acque, Mr. Mitsuk and Ms. Sciolino told their supervisor, Mr. Trevino, about the incident. In response, Mr. Trevino reached out to his staffing contact within M7, Melvin Coe, to formally complain about and report Mr. Frankie's behavior and the harassing commentary made toward Ms. Sciolino. Whether or not the conduct met any legal criteria for "sexual harassment," Mr. Trevino believed it to be sexual harassment and his report of, and opposition to, the harassment was made with such good faith belief and in keeping with company policy.

25. During Mr. Coe's investigation of the incident, Mr. Mitsuk and Mr. Acque supported Ms. Sciolino's version of the events and expressed their disgust with Mr. Frankie's behavior. However, when Mr. Coe spoke with Ms. Sciolino regarding the incident at the close of his investigation, he said that there was nothing he could do because it was a "he said, she said" situation.

26. When Mr. Trevino realized that M7 was not going to further address Mr. Frankie's harassment, he contacted Mr. Rojas at Elbit Systems in late September 2014 to inform him that Ms. Sciolino had been the victim of harassing remarks. Mr. Trevino called Mr. Rojas specifically because Mr. Rojas was the individual who was in charge of organizing the DOD project in Hawaii from Elbit System's end of the operation.

27. Mere days following Ms. Sciolino, Mr. Trevino and his team's reporting of the harassment, M7 and Elbit Systems opened an investigation into Mr. Trevino's team for alleged falsification of time sheets.

28. On September 26, 2014, Mr. Acque and Mr. Mitsuk were verbally informed by Mr. Coe that M7 would no longer need their services. Accordingly, Mr. Mitsuk and Mr. Acque were dismissed from their employment.

29. On September 26, 2014, Mr. Rojas verbally informed management at Elbit Systems of the harassment that occurred with Ms. Sciolino. On this same date, Mr. Rojas emailed three in-house counsel for Elbit Systems regarding the retaliatory terminations of Mr. Acque and Mr. Mitsuk, as well as issues related to losing more than half of the DOD project crew in Hawaii. Whether or not the conduct met any legal criteria for "sexual harassment," Mr. Rojas believed it to be sexual harassment and his report of, and opposition to, the harassment was made with such good faith belief and in keeping with company policy.

30. On September 29, 2014, Mr. Rojas had a meeting with Chris Puffer, counsel for Elbit Systems, to discuss his concerns regarding, *inter alia*, the harassment of Ms. Sciolino and the retaliatory terminations of Mr. Acque and Mr. Mitsuk.

31. On October 1, 2014, approximately five days after Mr. Acque and Mr. Mitsuk were terminated, Mr. Trevino was also terminated from his employment. The stated reason for his termination was that Mr. Trevino and his team falsified their time sheets. In support of this alleged basis for termination, Mr. Trevino was shown pictures, supposedly taken by Marine guards, of Mr. Trevino and his team on the beach. Allegedly, the pictures of Mr. Trevino's team were taken when the team was to have been working.

32. On October 8, 2014, Mr. Bowden informed Ms. Sciolino that the project she was working on was over. In addition, Mr. Coe told Ms. Sciolino that her services were no longer needed. As such, she was terminated from her employment on October 8, 2014.

33. On October 29, 2014, Elbit Systems removed all programs from Mr. Rojas' workload. Mr. Rojas was, instead, forced to sit substantially idle at his desk with menial and sporadic work for several months.

34. On March 2, 2015, Elbit Systems terminated Mr. Rojas' employment as a Senior Systems Engineer, citing a "reduction in force." Importantly, Mr. Rojas was the only engineer to be terminated during this "reduction in force."

## EXHAUSTION OF ADMINISTRATIVE REMEDIES

35. Plaintiff Eduardo Rojas timely filed a charge of discrimination against Defendant Elbit Systems with the Equal Employment Opportunity Commission ("EEOC") on or about July 13, 2015. Plaintiff Eduardo Rojas files this Complaint within 90 days after receiving a notice of the right to sue from the EEOC on February 28, 2017. He has satisfied all jurisdictional prerequisites for filing this lawsuit.

36. Plaintiff Joseph Trevino timely filed charges of retaliation against Defendant M7 and Defendant Elbit Systems with the EEOC on or about July 14, 2015. Plaintiff Joseph Trevino files this Complaint within 90 days after receiving notices of the right to sue from the EEOC on February 24, 2017, and February 28, 2017. He has satisfied all jurisdictional prerequisites for filing this lawsuit.

37. Plaintiff Tara Sciolino timely filed charges of retaliation against Defendant Elbit Systems and Defendant 4M with the EEOC on or about July 14, 2015. Plaintiff Tara Sciolino files this Complaint within 90 days after receiving notices of the right to sue from the EEOC on February 28, 2017. She has satisfied all jurisdictional prerequisites for filing this lawsuit.

38. Plaintiff Christopher Acque timely filed charges of retaliation against Defendant Elbit Systems and Defendant 4M with the EEOC on or about July 14, 2015. Plaintiff Christopher Acque files this Complaint within 90 days after receiving notices of the right to sue from the EEOC on February 14, 2017, and February 28, 2017. He has satisfied all jurisdictional prerequisites for filing this lawsuit.

39. Plaintiff Michael Mitsuk timely filed charges of retaliation against Defendant 4M and Defendant Elbit Systems with the EEOC on or about July 14, 2015. Plaintiff Michael Mitsuk files this Complaint within 90 days after receiving notices of the right to sue from the EEOC on February 14, 2017, and February 28, 2017. He has satisfied all jurisdictional prerequisites for filing this lawsuit.

## CAUSES OF ACTION

40. The foregoing paragraphs are realleged and incorporated by reference herein.

### A. Eduardo Rojas

41. Defendant Elbit Systems subjected Plaintiff Eduardo Rojas to adverse employment actions in retaliation for his expressed opposition to discriminatory employment practices and the sexual harassment of Ms. Sciolino. Namely, Mr. Rojas was retaliated against for good faith reporting and opposing Mr. Frankie's sexual harassment of Ms. Sciolino and the herein-described discriminatory terminations. Elbit Systems retaliated against Mr. Rojas by removing programs from his workload and forcing him to, instead, sit substantially idle at his desk for several months with menial and sporadic work. Ultimately, Elbit Systems retaliated against Mr. Rojas by terminating his employment on March 2, 2015, citing a "reduction in force." This stated reason for termination was a mere pretext for retaliation, as Mr. Rojas was the only engineer terminated during this "reduction in force." Defendant Elbit Systems thus committed unlawful employment practices in violation of 42 U.S.C. § 2000e-3.

42. Because of Elbit Systems' retaliatory employment practices, including the termination of Mr. Rojas' employment, Mr. Rojas is entitled to recover compensatory damages for emotional pain, suffering, inconvenience, mental anguish, loss of enjoyment of life, and other non-pecuniary losses, with prejudgment interest, pursuant to 42 U.S.C. Section § 2000e-5.

43. Mr. Rojas sustained lost wages and employment benefits by reason of Elbit Systems' commission of such unlawful employment practices. Accordingly, Mr. Rojas is entitled to an award of back pay with prejudgment interest in accordance with 42 U.S.C. Section § 2000e-5.

44. Because Elbit Systems engaged in unlawful employment practices with malice or with reckless indifference to Mr. Rojas' federally protected rights, he is entitled to an award of exemplary damages.

45. Mr. Rojas is entitled to recover attorney and expert fees and costs in accordance with 42 U.S.C. Section § 2000e-5.

### B. Joseph Trevino

46. Defendants Elbit Systems and M7 subjected Plaintiff Joseph Trevino to adverse employment actions in retaliation for his expressed opposition to discriminatory employment practices and the sexual harassment of Ms. Sciolino. Namely, Mr. Trevino was retaliated against for good faith reporting and opposing Mr. Frankie's sexual harassment of Ms. Sciolino. Elbit Systems and M7 retaliated against Mr. Trevino by opening a sham investigation into his team's time cards and, ultimately, terminating his employment on October 1, 2014. The investigation that allegedly supported Mr. Trevino's termination was a mere pretext for retaliation. Defendants Elbit Systems and M7 thus committed unlawful employment practices in violation of 42 U.S.C. Section § 2000e-3.

47. Because of Elbit Systems and M7's retaliatory employment practices, including the termination of Mr. Trevino's employment, Mr. Trevino is entitled to recover compensatory damages for emotional pain, suffering, inconvenience, mental anguish, loss of enjoyment of life, and other non-pecuniary losses, with prejudgment interest, pursuant to 42 U.S.C. Section § 2000e-5.

48.     Mr. Trevino sustained lost wages and employment benefits by reason of Elbit Systems and M7's commission of such unlawful employment practices. Accordingly, Mr. Trevino is entitled to an award of back pay with prejudgment interest in accordance with 42 U.S.C. Section § 2000e-5.

49.     Because Elbit Systems and M7 engaged in unlawful employment practices with malice or with reckless indifference to Mr. Trevino's federally protected rights, he is entitled to an award of exemplary damages.

50.     Mr. Trevino is entitled to recover attorney and expert fees and costs in accordance with 42 U.S.C. Section § 2000e-5.

**C. Tara Sciolino**

51.     Defendants Elbit Systems and 4M subjected Plaintiff Tara Sciolino to adverse employment actions in retaliation for her good faith reporting of and expressed opposition to sexual harassment. Namely, Elbit Systems and 4M retaliated against Ms. Sciolino for good faith reporting and expressing her opposition to sexual harassment by Mr. Frankie. Elbit Systems and 4M retaliated against Ms. Sciolino by terminating her employment on October 8, 2014. Defendants Elbit Systems and 4M thus committed unlawful employment practices in violation of 42 U.S.C. Section § 2000e-2 and 42 U.S.C. Section § 2000e-3.

52.     Ms. Sciolino is entitled to recover compensatory damages for emotional pain, suffering, inconvenience, mental anguish, loss of enjoyment of life, and other non-pecuniary losses, with prejudgment interest, pursuant to 42 U.S.C. Section § 2000e-5.

53.     Because Elbit Systems and 4M engaged in unlawful employment practices with malice or with reckless indifference to Mr. Sciolino's federally protected rights, she is entitled to an award of exemplary damages.

54.     Ms. Sciolino is entitled to recover attorney and expert fees and costs in accordance with 42 U.S.C. Section § 2000e-5.

55.     Ms. Sciolino sustained lost wages and employment benefits by reason of Elbit Systems and 4M's commission of such unlawful employment practices. Accordingly, Ms. Sciolino is entitled to an award of back pay with prejudgment interest in accordance with 42 U.S.C. Section § 2000e-5.

### D. Christopher Acque

56.     Defendants Elbit Systems and 4M subjected Plaintiff Christopher Acque to adverse employment actions in retaliation for his expressed opposition to discriminatory employment practices and the sexual harassment of Ms. Sciolino. Namely, Mr. Acque was retaliated against for good faith reporting and opposing Mr. Frankie's sexual harassment of Ms. Sciolino. Elbit Systems and 4M retaliated against Mr. Acque by terminating his employment on September 26, 2014. Defendants Elbit Systems and 4M thus committed unlawful employment practices in violation of 42 U.S.C. Section § 2000e-3.

57.     Because of Elbit Systems and 4M's retaliatory employment practices, including the termination of Mr. Acque's employment, Mr. Acque is entitled to recover compensatory damages for emotional pain, suffering, inconvenience, mental anguish, loss of enjoyment of life, and other non-pecuniary losses, with prejudgment interest, pursuant to 42 U.S.C. Section § 2000e-5.

58.     Mr. Acque sustained lost wages and employment benefits by reason of Elbit Systems and 4M's commission of such unlawful employment practices. Accordingly, Mr. Acque is entitled to an award of back pay with prejudgment interest in accordance with 42 U.S.C. Section § 2000e-5.

59. Because Elbit Systems and 4M engaged in unlawful employment practices with malice or with reckless indifference to Mr. Acque's federally protected rights, he is entitled to an award of exemplary damages.

60. Mr. Acque is entitled to recover attorney and expert fees and costs in accordance with 42 U.S.C. Section § 2000e-5.

    **E. Michael Mitsuk**

61. Defendants Elbit Systems and 4M subjected Plaintiff Michael Mitsuk to adverse employment actions in retaliation for his expressed opposition to discriminatory employment practices and the sexual harassment of Ms. Sciolino. Namely, Mr. Mitsuk was retaliated against for good faith reporting and opposing Mr. Frankie's sexual harassment of Ms. Sciolino. Elbit Systems and 4M retaliated against Mr. Mitsuk by terminating his employment on September 26, 2014. Defendants Elbit Systems and 4M thus committed unlawful employment practices in violation of 42 U.S.C. Section § 2000e-3.

62. Because of Elbit Systems and 4M's retaliatory employment practices, including the termination of Mr. Mitsuk's employment, Mr. Mitsuk is entitled to recover compensatory damages for emotional pain, suffering, inconvenience, mental anguish, loss of enjoyment of life, and other non-pecuniary losses, with prejudgment interest, pursuant to 42 U.S.C. Section § 2000e-5.

63. Mr. Mitsuk sustained lost wages and employment benefits by reason of Elbit Systems and 4M's commission of such unlawful employment practices. Accordingly, Mr. Mitsuk is entitled to an award of back pay with prejudgment interest in accordance with 42 U.S.C. Section § 2000e-5.

64. Because Elbit Systems and 4M engaged in unlawful employment practices with malice or with reckless indifference to Mr. Mitsuk's federally protected rights, he is entitled to an award of exemplary damages.

65. Mr. Mitsuk is entitled to recover attorney and expert fees and costs in accordance with 42 U.S.C. Section § 2000e-5.

## JURY DEMAND

66. Plaintiffs hereby demand a jury trial in accordance with federal law. The jury fee has been tendered.

## PRAYER

WHEREFORE, Plaintiffs pray that Defendants be cited to appear and answer herein, and that on final trial Plaintiffs have judgment for the following relief:

   i. A permanent injunction restraining and enjoining Defendants from engaging in unlawful employment practices based on sex, age, race and national origin;

   ii. Back pay, front pay, and other equitable relief;

   iii. Compensatory damages;

   iv. Exemplary damages;

   v. Pre- and post-judgment interest at the rates provided by law;

   vi. Attorney and expert fees and all court costs; and

   vii. Such other and further relief to which Plaintiffs may be justly entitled.

Respectfully submitted,

/s/Susan E. Hutchison
Susan E. Hutchison
Texas Bar No. 10354100
hutch@hsjustice.com

J. Robert Hudson

Texas Bar No. 24094736
jr@hsjustice.com

Hᴜᴛᴄʜɪsᴏɴ & Sᴛᴏʏ, PLLC
509 Pecan St., Ste. 201
Fort Worth, Texas 76102
Tel: (817) 820-0100
Fax: (817) 820-0111

**ATTORNEYS FOR PLAINTIFFS**